OPINION OF THE COURT
Robert W. Doyle, J.
In this CPLR article 78 proceeding, petitioners, American Society for the Prevention of Cruelty to Animals (ASPCA) et al., seek to have this court permanently enjoin the respondents, Board of Trustees of the State University of New York, State University of New York at Stony Brook (Stony Brook) et al., from violating the Freedom of Information Law (FOIL; Public Officers Law § 84 et seq.) and from denying access to unredacted project review forms, and other documents requested by petitioners. The petition is granted in part as indicated below.
By decision of this court dated May 3, 1989 (143 Misc 2d 522 [1989]) respondents herein were directed to allow the public to attend Laboratory Animal Users’ Committee meetings. (LAUC, now renamed as the Institutional Animal Care and Use Committee [IACUC].) The petitioners’ underlying concern in that proceeding was the care and treatment of animals used for experimentation. The respondents’ principle contentions were that confidential information would be revealed, academic and/or economic chaos would result from the revelations, and the nonpublic body aspect of the LAUC. The court cautioned the parties from using the decision as a political weapon, instead hoping the legal issues raised would reign paramount.
Nevertheless, the parties have returned to court vociferously arguing many of the same points previously raised, now under different guise. While the underlying issues, animal rights juxtaposed to laboratory research using animals, raise significant moral issues, such issues are not before the court and the court will not be lead down the path of interjection. Rather, the legal issues presented by this application are narrow, not unique, and are not previously undetermined.
"The people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.” (Public Officers Law § 84.) The Freedom of Information Law (Public Officers Law *850 § 84 et seq.) was enacted to enhance to the fullest permissible extent access of the public to records and information in possession of State and local governmental agencies (American Broadcasting Cos. v Siebert, 110 Misc 2d 744 [1981]). The law must be liberally construed to allow maximum access to documents (Matter of Miracle Mile Assocs. v Yudelson, 68 AD2d 176 [1979]).
Within the broad framework of the Freedom of Information Law are exceptions which are to be narrowly construed. The exceptions are permitted only when the governmental agency can prove that a legitimate public interest or a recognizable private right justifies refusal to disclose the information (Matter of New York Teachers Pension Assn. v Teachers’ Retirement Sys., 98 Misc 2d 1118 [1979], affd 71 AD2d 250).
Examining petitioners’ requests, respondents’ replies, the documentation submitted and the Freedom of Information Law, the court makes the following determination.
Petitioners’ requests fall into four categories: (1) project review forms; (2) project review forms for projects not funded or implemented; (3) record of final vote of LAUC members; and (4) list of documents in possession of LAUC.
1. PROJECT REVIEW FORMS
Researchers who intend to use live vertebrate animals in their research must obtain approval of the IACUC by submitting an "Application for Approval of Research on Educational Activities Involving Animal Subjects” (Application). Two Application forms have been used for this purpose during the time period in question.
The information requested in the latest Application includes (1) the name and department of the researcher; (2) the title of the research or educational activity; (3) the funding source; (4) the name of participating institutions, if applicable; (5) the name, age and weight and number of animals to be used; (6) animal housing requirements; (7) justification for use of the animals and significance of the project; (8) procedures to be performed on the animals; (9) whether the procedure will cause pain, stress or discomfort and, if so, what steps will be taken to alleviate such pain, stress or discomfort or justification for not alleviating such pain, stress or discomfort; (10) whether survival surgery will be performed and, if so, pre- and postoperative procedures and analgesic regime; (11) whether controlled or hazardous substances will be used; and (12) whether the animals will be euthanized at the completion of the research and, if so, what methods will be used.
*851 Respondents have supplied the Applications requested for approved projects but in redacted form.
Respondents have redacted the following items from the form: (1) name, department and telephone number of researcher; (3) funding source to the extent of the grant number; (8) procedures to be performed on the animals; (10) whether survival surgery will be performed and if so, pre- and postoperative procedures; (11) whether controlled or hazardous substances will be used; and (12) whether the animals will be euthanized at the completion of the research.
Respondents argue that the information redacted is confidential proprietary information which, if not protected, will adversely affect publication, credit, funding, and the researcher’s career. They contend releasing the redacted information may have a chilling effect on the researcher’s productivity because of fears of retaliation. In addition, respondents elucidated incidents of break-ins, thefts and arson at animal laboratory facilities throughout the county, as well as fear of harassment. As this court found in Matter of American Socy. for Prevention of Cruelty to Animals v Board of Trustees of State Univ. (143 Misc 2d 522, 525, supra) "Although initially compelling, the argument by respondent that public disclosure of proposed research will stifle research at the University cannot prevail. The chilling effect on research complained about by respondent can enure only if detailed descriptions of a particular project are revealed to the public.”
After careful examination of the forms in questions, the court finds once again and as specifically elucidated in the following portions of this decision, that the information requested does not require detailed descriptions of the projects in the first instance. Thus, respondents’ "chilling effect” argument must again fail. (See, University of Pa. v Equal Employment Opportunity Commn., 493 US —, 107 L Ed 2d 571 [Jan. 9, 1990].)
Public Officers Law §87 (2) (f) permits an agency to deny access to records or portions thereof that: "if disclosed would endanger the life or safety of any person”. The court, in its discretion, allows redaction of the name, department, location, telephone number and the grant number or application number of the funding source, under this section of the Public Officers Law (items [1] and [3]).
Items (10), (11) and (12) relate to the procedures to be performed on the animals including their treatment and *852 method of disposal. Respondents contend that the procedures to be used on the animals include ideas and concepts which are often novel and original and are the unique product of the researcher’s intellectual effort. If disclosed, respondents add, publication credit, funding and the researcher’s career could be adversely affected. They further argue that Public Officers Law § 87 (2) (a) exempts from disclosure any items specifically exempted from disclosure by State or Federal statute and 7 USC § 2157 specifically exempts release of trade secrets.
Section 2157 provides in pertinent part:
"2157. Penalty for release of trade secrets
"(a) It shall be unlawful for any member of an Institutional Animal Committee to release any confidential information of the research facility including any information that concerns or relates to—
"(1) the trade secrets, processes, operations, style of work or apparatus; or
"(2) the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures, of the research facility.”
The court has chosen one of the several hundred redacted "Applications for Approval of Research or Education Activities Involving Animal Subjects” to test the availability to respondents of the confidentiality argument. For clarity, the necessary portions of the application have been excerpted.
"Title of Research Project/Educational Activity 'Natural History of Borrelia burgdorferi in Peromyscus leucopus’
"Please list animals to be used:
"Genus, species, common name, strain(s) sex " 'Peromyscus, leucopus white footed mouse M/F’
"Age & Weight Number/Year Days/Animal
" 'Various 100 up to 6 months’
"Are special housing requirements necessary Yes No If Yes, please describe:
"Section A — Justification for the Use of the Animal Species
" 'Peromyscus leucopus is the natural host (primary host) *853 for infection with the Lyme disease spirochete (Borrelia burgdorferi).’
"Is the proposed research project/educational activity intended to study pain, stress, or discomfort for scientific reasons?
"Yes No.
"If so, please explain:
"Section B SIGNIFICANCE OF THE RESEARCH PROJECT/EDUCATIONAL ACTIVITY
" 'Research on the natural cycle of the parasite which is presently unknown under controlled conditions may lead to methods of control. Research to determine possible antigenic shifts and variation of the organism in nature may enable health officials to predict changes in virulence and spread the Lyme disease.’
"section c procedures
"1. Is it necessary to manipulate, perform surgery or house animals outside the DLAR for 24 hours or more? If Yes, identify the location where the manipulations, surgery or housing will occur and justify”.
Three lines have been provided for response. The response has been redacted by respondents.
"2. Will survival surgery be performed? [Redacted response.]
"If YES, please describe;
"a. Pre-operative Period (e.g. fasting period, antibiotic treatment, pre-anesthetics, etc.)
"b. Surgery (e.g. anesthetics and method of employment, description of surgical manipulates, qualifications and/or experience of individual(s) performing surgery, etc.)
"c. Post-operative period (e.g. post operative care, analgesic/ anti-inflamatory therapy, antibiotic treatment, management of post operative complications, arrangements for after hours, weekends and holidays for postoperative care, etc.)
"If NO, please complete Number 3.”
There are seven lines for a response which have been redacted by respondents.
The questions asked, the responses to which were redacted by respondents, do not seek information that would ordinarily engender information which could be considered a trade secret and invoke the protection of 7 USC § 2157. They are framed to *854 elicit information concerning the care and treatment of the animals in question. This comports well with the purpose of the IACUC. The questions do not, except in the most general of terms, explore the underlying hypothesis of the researcher, the researcher’s method, analysis or results. While the court can postulate a few circumstances in which the responses would not be subject to revelation under the Freedom of Information Law no such specific instances have been brought to the attention of the court in this matter. Instead, the respondents chose to use a broad brush and redact all responses to these questions. This was a policy judgment by respondents which neither the statute nor the facts support.
Where an exemption from FOIL is asserted, the burden of supporting the exemption is on the agency "to articulate particularized and specific justification”, and to establish with specificity that "the material requested falls squarely within the ambit of * * * statutory exemptions”. (Matter of Fink v Lefkowitz, 47 NY2d 567, 571.) Here, conclusory assertions by respondents without interjection of specifics related to the documents at hand belie their arguments and prohibit the exclusion sought.
Accordingly, respondents are directed to furnish petitioners the Applications sought redacted only as indicated in this decision without further cost to petitioners as they have previously paid for the redacted copies.
2. PROJECT REVIEW FORMS FOR PROJECTS NOT FUNDED OR IMPLEMENTED
This request is for the same Applications only the projects, in this instance, were not approved. Respondents assert these forms are intraagency documents exempt pursuant to Public Officers Law § 87 (2) (g).
The policy behind this exception for intraagency materials is to encourage the open exchange of ideas among government policymakers, while still maintaining broad public access to agency records (Ingram v Axelrod, 90 AD2d 568 [1982]). An agency may not throw a protective blanket over all information by casting it in intraagency terms. The question in each instance is whether possession of the contested document would be injurious to the consultative functions of the government that the privilege of nondisclosure protects (Matter of Miracle Mile Assocs. v Yudelson, 68 AD2d 176, supra).
The nonapproved Applications, respondents argue, are not submitted to the United States Department of Agriculture (as *855 required in the case of approved Applications) and are not "agency records” because they are received from an outside source.
This argument is circumlocutious and can be analogized to the filing of court papers. Once they are filed, they become public documents. The nonapproved Applications are not created by the agency nor would their disclosure be more injurious to the "consultive functions of the government” than approved Applications. The court does not find even a modicum of support for respondents’ intraagency exclusion arguments.
3. RECORD OF FINAL VOTE OF LAUC MEMBERS
Public Officers Law § 87 (3) (a) provides:
"Each agency shall maintain:
"(a) a record of the final vote of each member in every agency proceeding in which a member votes”.
Petitioners requested these documents as they pertain to the final votes of LAUC members. Respondents assert that the committee operates by consensus, no formal vote is taken and no record kept, except for approval or disapproval of the Application.
Public Officers Law § 87 (3) (a) does not mandate that a vote be taken in any particular matter or instance. However, it does require that if a final vote is taken a record must be kept of each member’s vote.
IACUC is not an advisory agency. It does not perform a consulting function. Its function and purpose is to approve or disapprove Applications put before it. A consensus is "judgment arrived at by most of those concerned” (Webster’s New Collegiate Dictionary 238 [150th anniversary ed]). It can only be arrived at by some type of allocution by each member. Whether by formal written ballot or informal oral expression, it is a vote, with the Application’s approval or denial dependent upon the outcome of that vote. Thus according to Public Officers Law §87 (3) each member’s final vote must be recorded.
The requirement that a IACUC vote must be recorded can only have prospective application as no such records were previously thought to be required by IACUC and as no such records were kept. The court will not require reconstructing of the many hundreds of determinations previously made by IACUC.
*856 4. LIST OF DOCUMENTS IN POSSESSION OF IACUC
Public Officers Law § 87 (3) requires that each agency maintain: "(c) a reasonably detailed current list by subject matter, of all records in the possession of the agency, whether or not available under this article.”
Respondents contend that Stony Brook University maintains such a list, not IACUC, but petitioners never requested the list. Petitioners assert that the statute requires each agency to maintain the list and since IACUC is an agency it must maintain its own list.
The requirements of FOIL pertain to many different governmental entities. Departments, boards, bureaus, divisions, commissions, committees, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the State or any one or more municipalities thereof are agencies as defined in Public Officers Law § 86. Some governmental departments may contain many "agencies” within this definition. As long as the "detailed current list by subject matter” is kept as required by Public Officers Law § 87 (3) (c), the court finds no requirement that this list cannot be maintained by the larger entity (in this instance SUNY at Stony Brook) rather than each subdivision thereof. This can only lead to economics of scale, standardization of form and format of the lists maintained, easier access to the lists by the public. Because the list in question is purportedly maintained by Stony Brook and was not requested by petitioners once they were informed there was such a list, the relief petitioners request as to this item is denied.
5. attorneys’ fees, costs and sanctions
Attorneys’ fees and costs are available when the record requested was of clearly significant interest to the general public and when the agency lacked a reasonable basis in law for withholding the record. This relief lies within the sound discretion of the court (Matter of McAndrew v Board of Educ., 120 AD2d 591 [1986]).
The court, in its discretion, finds that respondents had a reasonable basis in law for redacting certain materials and withholding others and declines to award costs or attorneys’ fees. (Matter of Hopkins v City of Buffalo, 107 AD2d 1028.) There is no support in the record for petitioners’ request for sanctions.