S.E.T.A. UNC-CH, INC., PETITIONER-APPELLANT v. WILLIAM D. HUFFINES, M.D., CHAIRMAN OF THE INSTITUTIONAL ANIMAL CARE AND USE COMMITTEE, OF THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, RESPONDENT-APPELLEE

No. 9010SC353

(Filed 15 January 1991)

1. **Animals, Livestock, or Poultry § 1 (NCI4th)— experiments using animals—fears of violence from disclosure—applications to IACUC not protected**

   Information in applications to the Institutional Animal Care and Use Committee (IACUC) for approval of research experiments using animals is not required to be protected because of researchers' fears of violence and harassment.

   **Am Jur 2d, Animals § 30.5.**

2. **Animals, Livestock, or Poultry § 1 (NCI4th)— experiments using animals—applications to IACUC—no trade secrets**

   Information in applications to the IACUC for approval of research experiments using animals did not constitute confidential trade secrets protected from disclosure by N.C.G.S. § 66-152.

   **Am Jur 2d, Animals § 30.5; Depositions and Discovery § 47.**

   **Applicability of state animal cruelty statute to medical or scientific experimentation employing animals. 42 ALR4th 860.**

3. **Animals, Livestock, or Poultry § 1 (NCI4th)— experiments using animals—applications to IACUC—academic freedom**

   Information in applications to the IACUC for approval of research experiments using animals was not protected from public disclosure by principles of academic freedom under the First Amendment.

   **Am Jur 2d, Animals § 30.5; Depositions and Discovery § 29.**

4. **Animals, Livestock, or Poultry § 1 (NCI4th)— experiments using animals—applications to IACUC—portions required to be disclosed**

   The IACUC is required by N.C.G.S. § 132-9 to disclose to petitioners portions of applications for approval of animal research experiments relating to the titles of the project; the species and number of animals to be used; justification for

use of the animals and significance of the projects; procedures to be performed on the animals; whether surgery will be performed and, if so, pre- and postoperative care; steps taken to minimize pain and discomfort; and the method of euthanasia, if any. However, petitioners are not entitled to the disclosure of information in the applications relating to the department name and the names, telephone numbers, addresses and experience of the applicants and any other researchers or staff members participating in the experiments.

**Am Jur 2d, Animals § 30.5; Depositions and Discovery §§ 21, 34-36.**

**Applicability of state animal cruelty statute to medical or scientific experimentation employing animals. 42 ALR4th 860.**

APPEAL by petitioner from a judgment entered 20 December 1989 by *Judge J. B. Allen, Jr.*, in Superior Court, WAKE County. Heard in the Court of Appeals 24 October 1990.

*Gary L. Francione and Alexander Charns for petitioner-appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General James Wallace, Jr. and Special Deputy Attorney General Charles M. Hensey, for respondent-appellee.*

LEWIS, Judge.

On 14 January 1989, petitioner, Students for the Ethical Treatment of Animals, University of North Carolina — Chapel Hill (hereinafter "SETA"), an incorporated, voluntary student organization, sought access to various documents of the Institutional Animal Care and Use Committee (hereinafter "IACUC") relating to the care and use of animals in scientific experiments. The respondent refused to provide the "application for approval" forms for four particular experiments submitted for review to the IACUC. The respondent also refused to provide copies of the minutes of the IACUC meetings.

On 9 October 1989, SETA petitioned the Superior Court for an order compelling disclosure. In its application, petitioner requested that: (1) the court enter an order directing the respondent to release the records sought by petitioner or show cause why respondent should not be required to produce the records; (2) the

court declare the requested records to be "public records" under N.C.G.S. § 132-9; (3) respondent be enjoined permanently from denying access to these records; and (4) the court award to petitioners the costs and expenses of suit, including a reasonable attorney's fee.

On 20 December 1989, the court denied petitioner's application finding that each requested document contained confidential information of proprietary value, which could not be redacted, and that public policy considerations protected information relating to experiments on live animals and outweighed any need for disclosure. Based upon these findings of fact, the court concluded as a matter of law that: (1) the requested documents contained "trade secrets" as defined by N.C.G.S. § 66-152; (2) the court identified Art. 24, Chap. 66 of the North Carolina General Statutes as an independent ground for denial of disclosure; (3) the court concluded that "public policy considerations alone served as a basis for denial"; and (4) the court held that a "Qualified privilege of academic freedom guaranteed by the First Amendment of the Constitution of the United States," exempted the requested documents from disclosure. From denial of its petition, SETA appeals.

We first note that SETA has voluntarily dismissed its appeal regarding the disclosure of the minutes of the IACUC meetings. Accordingly, this opinion does not discuss the merits of that aspect of the case. This appeal addresses the issue of whether the respondents are required under N.C.G.S. § 132-1 et seq. (Public Records Law) to disclose any or all of the information contained in the applications submitted by research scientists to the IACUC.

The IACUC is a committee created under the Federal Animal Welfare Act, 7 U.S.C. §§ 2131-2157 (1985), to inspect animal study areas and animal facilities, and to review all potential research experiments to ensure that all experiments minimize pain and distress in animals used in experiments. In conjunction with its duty to review potential research, the IACUC requires the "principal investigation" seeking funding for a research project using vertebrate animals, to submit to the committee a protocol application. The application seeks to elicit information regarding the care and use of the animals throughout the experimentation as well as the method of euthanasia, if necessary. SETA presently seeks to obtain access to four of these applications: 1. "Effects of Opiate Manipulations on Latent Inhibitions in Rabbits: Sensitivity of the Medial Septal Region to Intracranial Treatments"; 2. "Recovery

and Regeneration of Spinal Neuron Injury"; 3. "Long-Term Neurobiological Effects of Early Social Isolation," and 4. "Neurophysiological Studies of Respiratory Control." We grant their petition in part.

We hold that the trial court erred in finding that no portion of the requested applications could be disclosed to petitioners and that the information could not be redacted. The information requested in the applications include (1) the title of the project; (2) the name and phone number of the researchers; (3) the researcher's department; (4) the species and number of animals to be used; (5) justification for use of the animals and significance of the project; (6) procedures to be performed on the animals; (7) whether survival surgery would be performed and if so, pre and post operative care; (8) names and phone numbers of personnel who would work with the animals; (9) their training and experience; (10) what steps would be taken to minimize pain and discomfort; and (11) the method of euthanasia.

[1] Respondents argue that the information contained in the applications is confidential and proprietary information which must be protected to insure the safety and security of the researcher. The affidavits submitted by respondent indicate that the researchers fear disclosure of their projects would result in violence against them and their staff as well as jeopardize any publication and commercial interest they may have in the research. In essence respondent argues that releasing the applications would cause a "chilling effect" on university research.

We reject respondent's argument that the entire IACUC application must be protected because of the researcher's fear of violence and harassment. The applications are so general in nature as to reveal little or nothing to others. The "chilling effect" contemplated should not occur. *See University of Pennsylvania v. Equal Employment Opp. Com.*, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). It is significant that after the research proposal has received approval from the IACUC Committee, it is submitted to the applicable federal funding agency. The federal applications for funding are much more detailed documents than the original applications to the IACUC Committee. Also, the federal applications disclose much more fully the nature of the proposed research. These documents are subject to disclosure under the Freedom of Information Act. *See* 5 U.S.C. §§ 552 *et seq.*

Portions of the federal applications may not be made public if the procedures therein could be patented. That is a valid basis for excluding information and we recognize it as such. No one has contended that any part of the four "applications" before us contains patentable ideas or procedures. If subsequent applications on the state level in North Carolina contain material which could be patented, that will surely be made clear to the court having cognizance.

SETA has obtained the federal grant applications for all four of the IACUC projects which are the subject of this appeal. However, we are sensitive to the needs of researchers to protect their privacy and the privacy of their staffs. We conclude that public policy does require that any information contained in the applications relating to the names of the researcher and staff members, their telephone numbers, addresses, their experience and the department name be redacted from the IACUC applications. We also conclude that applications not approved need not be made public.

[2] The respondent also contends that the applications are protected because *all* of the information contained in the applications constitutes confidential trade secrets. We disagree. N.C.G.S. § 66-152 defines a "trade secret":

> "Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use. . . .

N.C.G.S. § 66-152(3)a.

We conclude that the information elicited by the questions in these applications are not "trade secrets" subject to protection. What type and how many animals are going to be used in a particular research project is not a trade secret, nor is whether surgery is going to be performed or the type of anesthesia to be used. Pre and postoperative procedures are not trade secrets, nor is how the animals' pain and discomfort is to be minimized nor the method of euthanasia, if any. The IACUC must disclose this information. Furthermore, while the application seeks a brief discussion of the justification of the proposed research and the projects' objec-

tives, it is clear that the committee is only seeking a very general description from the applicant. Such general description can hardly be considered as a "trade secret" as defined above. The description required is far less detailed than the information required to be submitted which is obtainable through the Freedom of Information Act in federal grant applications. We have examined the four requested applications *in camera* and find that as to these applications the questions relating to research objectives and justifications are not trade secrets. *See ASPCA v. State University of New York at Stony Brook*, 556 N.Y.S.2d 447 (1990) (questions asked on an IACUC application regarding justification and objective of research held not to be trade secrets under applicable state law).

[3] Finally, respondents argued below that the information was protected by the First Amendment. They argue that the First Amendment creates an academic exception for disclosure of documents. This argument has been rejected by the United States Supreme Court. *University of Pennsylvania v. Equal Employment Opportunity Commission*, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). This case was handed down after Judge Allen's decision so he could not have known of it. We are bound by this decision and conclude that the trial court erred in concluding that disclosure was not permitted because of academic privilege.

[4] As to these eleven matters on these four applications, we find as follows:

(1) The "Title of the Project" is not excludable and must be made public.

(2) The names and phone numbers and addresses of the applicant and researchers are confidential and need not be released.

(3) The researcher's department need not be released.

(4) The species and number of animals used is not excludable and should be released.

(5) Justification for use of the animals and significance of the project in these applications is not excludable and should be released.

(6) Procedures to be performed on the animals are, in these applications, not excludable and should be released.

(7) Whether or not survival surgery would be performed and if so, pre and postoperative care, is not excludable in these applications and should be released.

(8) The names, addresses, departments and phone numbers of personnel who would work with the animals should not be disclosed.

(9) The training and experience of the applicant and researchers should not be disclosed.

(10) Steps taken to minimize pain and discomfort as described here are not excludable and should be disclosed.

(11) Method of euthanasia, if any, in these applications is not excludable and should be disclosed.

It is conceivable that some of the answers to questions in future applications could contain "trade secrets" or be patentable and hence excludable. These questions will have to be decided on a case by case basis. In the present case, we hold that the Public Records Law weighs on the side of disclosure of public documents.

We cannot permit a procedure to be withheld from the public merely because someone chooses to label it a "trade secret," when it is performed daily by many people and taught in schools all over the world.

Remanded to Wake County Superior Court for entry of an order consistent with this opinion.

Judges WELLS and COZORT concur.