S.E.T.A. UNC-CH, INC., PETITIONER-APPELLANT v. WILLIAM D. HUFFINES, M.D., CHAIRMAN OF THE INSTITUTIONAL ANIMAL CARE AND USE COMMITTEE OF THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, RESPONDENT-APPELLEE

No. 9110SC718

(Filed 15 September 1992)

1. **Costs § 37 (NCI4th) — compelling disclosure of public records — award of attorney fees — findings required**

Before a trial judge can exercise statutory discretion under either N.C.G.S. § 6-19.1 or § 6-19.2 and award attorney fees to a party in a proceeding to compel disclosure of public records, the party moving for attorney fees must be a "prevailing party"; the court must find that the agency acted without substantial justification; and the court must find that there are no special circumstances making a fee award unjust.

**Am Jur 2d, Records and Recording Laws § 31.**

2. **Costs § 37 (NCI4th) — compelling disclosure of public records — substantial justification for withholding — test for substantial justification**

Pursuant to N.C.G.S. § 6-19.2 allowing an award of attorney fees in a proceeding to compel disclosure of public records if the agency acted without substantial justification, the test for substantial justification is not whether the court on appeal ultimately upheld respondent's reasons for resisting public disclosure of the requested documents as correct, but, rather, whether respondent's reluctance to disclose was justified to a degree that could satisfy a reasonable person under the existing law and facts known to, or reasonably believed by, respondent at the time respondent refused to make disclosure.

**Am Jur 2d, Records and Recording Laws § 19.**

**What constitutes legitimate research justifying inspection of state or local public records not open to inspection by general public. 40 ALR4th 333.**

3. **Costs § 37 (NCI4th) — compelling disclosure of public records — existence of substantial justification for withholding**

   Respondent had substantial justification for denying petitioner access to records of laboratory protocols where the Attorney General was of the opinion that the matters at issue in this case were undisclosable personnel records; respondent was of the opinion that disclosure would violate the researchers' free speech and due process rights under the First and Fourteenth Amendments as well as their rights to trade secret protection under federal and state statutes; sixteen affidavits from eminent scientific researchers in support of respondent's position were filed with the trial court; and these affidavits raised concerns about personal safety of the researchers and their families, university ability to attract and retain researchers if laboratory experiments were disrupted by animal rights activists, premature exposure of novel ideas and methods which might be stolen by others, and the threat to researchers' proprietary rights in patentable work.

   **· Am Jur 2d, Records and Recording Laws § 19.**

   **What constitutes legitimate research justifying inspection of state or local public records not open to inspection by general public. 40 ALR4th 333.**

APPEAL by petitioner from order entered 23 April 1991 by *Judge Donald W. Stephens* in WAKE County Superior Court. Heard in the Court of Appeals 13 May 1992.

*Tharrington, Smith & Hargrove, by Douglas A. Ruley, and M. Alexander Charns, for petitioner-appellant.*

*Attorney General Lacy H. Thornburg, by Chief Deputy Attorney General Andrew A. Vanore, Jr., and Special Deputy Attorney General Charles M. Hensey, for respondent-appellee.*

PARKER, Judge.

Petitioner appeals from the trial court's determination that petitioner is not entitled to attorney's fees pursuant to N.C.G.S.

§ 6-19.2. Petitioner's amended motion requests reimbursement under
N.C.G.S. § 6-19.2 in the amount of $32,356.53 for litigation expenses
incurred in petitioner's action to compel respondent to disclose
certain documents as required by N.C.G.S. §§ 132-1 *et seq.*, the
Public Records Act. The four documents at issue describe proposed
laboratory research on animal subjects at the Chapel Hill campus
of the University of North Carolina.

In petitioner's prior appeal from a trial court judgment shielding
these documents from disclosure, this Court held that respondent
was required to disclose most of the contents of the applications
for approval of laboratory animal protocols. *S.E.T.A. UNC-CH v.
Huffines*, 101 N.C. App. 292, 399 S.E.2d 340 (1991). In particular,
the Court held that (i) the applications at issue in the case did
not contain trade secrets, contrary to the lower court's conclusion
that the materials had federal and State statutory trade secrets
protection; (ii) the First Amendment did not create a qualified
academic privilege against disclosure of confidential records, under
the authority of *University of Pennsylvania v. EEOC*, 493 U.S.
182, 107 L.Ed.2d 571 (1990), a U.S. Supreme Court decision an-
nounced 9 January 1990, several weeks after the lower court's
judgment in the present case; but (iii) public policy did protect
the privacy interests of scientific researchers and their staff members
in personal and professional information such as their names,
telephone numbers, addresses, experience and departmental affilia-
tions. Consistent with the resolution of the prior appeal, the trial
court ordered respondent to disclose the requested documents with
personal information redacted.

[1]   N.C.G.S. § 6-19.2 provides as follows:

> In any civil action in which a party successfully compels
> the disclosure of public records pursuant to G.S. 132-9 or other
> appropriate provisions of law, the court may, in its discretion,
> allow the prevailing party to recover reasonable attorney's
> fees to be taxed as court costs against the appropriate agency
> if:
>
> (1) The court finds that the agency acted without substan-
>     tial justification in denying access to the public records;
>     and
>
> (2) The court finds that there are no special circumstances
>     that would make the award of attorney's fees unjust.

N.C.G.S. § 6-19.2 (1986). Both N.C.G.S. § 6-19.2 and N.C.G.S. § 6-19.1, a closely analogous provision governing attorney's fees for private litigants who successfully appeal from or defend against agency action, give the trial court discretionary power to order a fee award once the court determines, as a matter of law, "that certain criteria are present." *Tay v. Flaherty*, 100 N.C. App. 51, 57, 394 S.E.2d 217, 220, *disc. rev. denied*, 327 N.C. 643, 399 S.E.2d 132 (1990) (interpreting N.C.G.S. § 6-19.1); *see also N.C. Press Assoc., Inc. v. Spangler*, 94 N.C. App. 694, 381 S.E.2d 187, *disc. rev. denied*, 325 N.C. 709, 388 S.E.2d 461 (1989) (interpreting N.C.G.S. § 6-19.2).

Three criteria must exist before a trial judge can exercise statutory discretion under either N.C.G.S. § 6-19.1 or § 6-19.2. First, the party moving for attorney's fees must be a "prevailing party." *See, e.g., House v. Hillhaven, Inc.*, 105 N.C. App. 191, 412 S.E.2d 893, *disc. rev. denied*, 331 N.C. 284, 417 S.E.2d 251 (1992). Second, the court must find that the agency acted without substantial justification; and finally the court must find there are no special circumstances making a fee award unjust. *N.C. Press Assoc., Inc. v. Spangler*, 94 N.C. App. at 696, 381 S.E.2d at 189.

In the present case the trial court found both that petitioner was the prevailing party and also that no special circumstances would make a fee award unjust. These two findings are not challenged on appeal. However, the trial court also found and concluded that it could not award fees "when the evidence of record, as a matter of law, fails to demonstrate that the agency acted *without substantial justification* in denying access to the public records." Under our case law, the burden is on an agency to set out sufficient facts and legal theories to show substantial justification for non-disclosure. *Id.* at 698, 381 S.E.2d at 190. Finding the agency had made such a showing in this case, the trial court said it had to "reluctantly" rule it was precluded from making a discretionary fee award.

[2] On appeal petitioner argues that it is entitled to attorney's fees on the ground that none of respondent's proffered justifications for refusing petitioner access to the protocols had any reasonable basis in fact or law. We disagree. The test for substantial justification is not whether this Court ultimately upheld respondent's reasons for resisting public disclosure of the requested documents as correct but, rather, whether respondent's reluctance to disclose was " 'justified to a degree that could satisfy a reasonable person' "

under the existing law and facts known to, or reasonably believed by, respondent at the time respondent refused to make disclosure. *Tay v. Flaherty*, 100 N.C. App. at 56, 394 S.E.2d at 219-20 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 101 L.Ed.2d 490, 504-505 (1988) ). We find such reasonable basis under the facts of the present case.

[3] In *Pierce* the Court observed that "substantially justified" did not connote "justified to a high degree" but, rather, "justified in substance or in the main" or for the most part. 487 U.S. at 565, 101 L.Ed.2d at 504. The Court specifically rejected an analysis that would require "substantial justification" to meet the criteria of substantial correctness or reasonable justification: "[A] position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct. . . ." *Id.* at 566 n.2, 101 L.Ed.2d at 505 n.2. Applying these criteria to the present case, we hold the trial court correctly concluded, as a matter of law, that respondent had shown substantial justification for nondisclosure. Accordingly, the trial court properly determined that it could not exercise its discretion under N.C.G.S. § 6-19.2 and we affirm the trial court's denial of petitioner's motion for attorney's fees.

Before petitioner instituted its court action, it informally requested access to a number of different categories of records in respondent's possession. Respondent disclosed some materials and not others, on the ground that the latter group of documents did not come within the Public Records Act. Respondent subsequently explained to petitioner, by letter dated 17 April 1989, that the Attorney General was of the opinion that the laboratory protocols at issue in this case were undisclosable personnel records.

Petitioner waited until 9 October 1989 to file its judicial application for access to the undisclosed documents. Effective 8 June 1989 the Public Records Act had been amended to recognize an exemption for trade secrets. N.C.G.S. § 132-1.2 (1990). Respondent asserted, in response to the judicial petition, that disclosure would violate the researchers' free speech and due process rights under the First and Fourteenth Amendments as well as their rights to trade secret protection under federal and State statutes. Sixteen affidavits from eminent scientific researchers in support of respondent's position were filed with the trial court. These affidavits expressed a number of realistic, overlapping concerns, including fears

about (i) personal and family safety should animal researchers' names and projects be made public, (ii) university ability to attract and retain top-flight researchers if laboratory experiments were disrupted by animal rights activists, uninformed adverse publicity and inadvertent or intentional misappropriation of original ideas, (iii) premature exposure of novel ideas and methods, which might then be stolen by others before the research was even conducted and the results of that research published by the persons who originated the ideas and methods, (iv) the chilling effect on researchers' willingness to propose valuable experiments using primates and other animals closely related to man for fear of reprisals and harassment by animal rights groups, and (v) the threat to researchers' proprietary rights in patentable work. One affiant, contrasting the preferred private nature of applications for animal protocols and the mandatory public access to unpatentable ideas and methods in subsequent federal grant applications, stated he considered public disclosure at the latter, funding stage to be a "quid pro quo which I gladly give for the sake of getting public support."

As to respondent's assertion of First Amendment rights, we hold that "a reasonable person could think [such protection] correct." *Pierce v. Underwood*, 487 U.S. at 566 n.2, 101 L.Ed.2d at 505 n.2. While this Court in the prior appeal considered itself bound by 1990 U.S. Supreme Court precedent to reject academic freedom as a barrier to disclosure under the Public Records Act, *University of Pennsylvania v. EEOC*, 493 U.S. 182, 107 L.Ed.2d 571 (1990), it was certainly not clear in 1989, when respondent asserted this justification for nondisclosure, that an argument for such an extension of the law of qualified academic privilege was unreasonable. "Although the meaning of constitutional academic freedom remains ambiguous, the Supreme Court has clearly recognized it as an unenumerated first amendment right . . . ." David M. Rabban, *A Functional Analysis of "Individual" and "Institutional" Academic Freedom under the First Amendment*, Law & Contemp. Probs., Summer 1990, at 227, 300. However, "it would still be quite incorrect to suggest that the protection of academic freedom is now reasonably secure. Assuredly it is not." William W. Van Alstyne, *Academic Freedom and the First Amendment in the Supreme Court of the United States: An Unhurried Historical Review*, Law & Contemp. Probs., Summer 1990, at 79, 153. *See, e.g., Shelton v. Tucker*, 364 U.S. 479, 5 L.Ed.2d 231 (1960) (State statute forcing comprehensive disclosure was overbroad on First Amendment

grounds where teachers might be intimidated or risk covert retaliatory use of the disclosed information); *see also Dow Chemical Co. v. Allen*, 672 F.2d 1262 (7th Cir. 1982).

Petitioner also argues that respondent's invocation of trade secrets protection had no reasonable basis in fact or law. In support of this argument, petitioner cites this Court's observations in the prior appeal that the blank application forms were very "general in nature" and that petitioner had obtained the much more detailed federal grant applications for these same projects. The blank forms do not predict, however, what information will be supplied by a researcher for a particular project and neither trade secrets nor patentable ideas are disclosable, as a matter of law, under the federal Freedom of Information Act ("FOIA") or our Public Records Act. In fact, this Court specifically recognized in the prior appeal the protection from public disclosure accorded such information.

> Portions of the federal applications may not be made public if the procedures therein could be patented. That is a valid basis for excluding information and we recognize it as such. No one has contended that any part of the four "applications" before us contains patentable ideas or procedures. If subsequent applications on the state level in North Carolina contain material which could be patented, that will surely be made clear to the court having cognizance.

*S.E.T.A. UNC-CH v. Huffines*, 101 N.C. App. at 296, 399 S.E.2d at 343.

Petitioner contends that its access under FOIA to the researchers' more detailed grant applications renders respondent's invocation of trade secrets protection virtually frivolous. Petitioner further contends that the trade secrets exemption was not available when respondent initially denied petitioner's request for disclosure, that none of respondent's affidavits point to a single trade secret in the requested documents, and that the applications describe processes and plans lacking in the necessary element of independent commercial value. However, this Court did not take the position in the prior appeal that respondent's argument bordered on the frivolous, but instead the Court was responding to respondent's contention that "*all* of the information contained in the applications constitutes confidential trade secrets." *Id.* The Court's *in camera* examination of the four applications at issue here revealed only that, as to "the questions relating to research objectives and justifica-

tions," these particular applications did not contain trade secrets. *Id.* at 297, 399 S.E.2d at 343. Petitioner would, however, have been blocked from securing access to trade secrets, had the researchers actually included such information, whether or not petitioner had obtained other parts of the grant applications under FOIA, as this Court intimated in the previous appeal.

Moreover, the affidavits submitted to the trial court were not intended to provide descriptions of any particular research project within petitioner's request, but rather to state researchers' objections to automatic public access to preliminary applications containing their intellectual property and to describe individual researchers' experiences at the Chapel Hill campus with animal rights activists. While affiants do not mention trade secrets *per se*, they do allege certain proprietary rights, for instance, in their "insights, ideas and approaches" (Exhibit C), and they raise the issue of patentability (Exhibits D, M and N) and associated jeopardy should patentable procedures be disclosed. As discussed above, these concerns were both reasonable in fact and valid in law.

Finally, respondent's public policy argument on behalf of the privacy interests of researchers provided additional justification for respondent's position; and, indeed, this Court upheld that ground in the prior appeal. *Id.* at 296, 399 S.E.2d at 343.

For the foregoing reasons we affirm the trial court's order.

Affirmed.

Judges COZORT and GREENE concur.