OPINION OF THE COURT
William E. McCarthy, J.
In this CPLR article 78 proceeding, petitioner Jacqueline Coyer seeks a judgment compelling respondents New York State Department of Environmental Conservation, Ruth Earl and Louis A. Alexander to comply with her Freedom of Information Law (FOIL) request pursuant to Public Officers Law § 85 by providing her with the public information she sought, together with costs of this litigation pursuant to Public Officers Law § 89. Respondents oppose the petition.[1]
Respondent New York State Department of Environmental Conservation (hereinafter, DEC) regulates recreational hunting, fishing, and trapping in New York. In conjunction with this regulatory activity, the DEC requires licenses for those recreational activities. Prior to 2002, the DEC did not maintain a master list of the various licenses it issued through its statewide vendors. The DEC did, however, maintain a database of licensed hunters who applied for “deer management permits” (hereinafter, DMP).[2] In 2002, the DEC instituted a computerized licensing system known as the Department of Environmental Conservation Automated Licensing System (hereinafter, DECALS). DECALS allows the DEC to record all hunting, fishing, and trapping licenses on one central database. The database also includes subscribers to the DEC’S magazine, The Conservationist. The database, in 2004, included 1.1 million individuals, of which approximately 615,000 were licensed hunters. The *263 database contains information regarding the applicant garnered from his or her licensing application, including the applicant’s first and last name, middle initial, suffix, gender, height, eye color, date of birth, driver’s license number, customer identification number, state residency, notation of blindness, military status, permanent military disability of 40% or more, fulfillment information, preference points, e-mail address, residential address, and telephone number.
For approximately nine years, the New York State Assembly has submitted a FOIL request seeking access to the DMP application computer file, with which the DEC has complied. On February 4, 2004, petitioner, as a citizen taxpayer and as pari of her employment duties with the Assembly, submitted a FOIL request for the DMP application computer file, seeking the application in the following format:
“Please include a COPY OF [Y]OUR FILE LAYOUT, EXPLANATION OF ANY CODES USED AND WHAT THE CODE REFERS TO, AND TOTAL RECORD COUNT. Preferred media is Zip Disk, CD or Diskette. If possible, we are requesting the same format we received in previous years. If not, an ASCII text filed, delimited or fixed length, is preferred” (Goyer letter, Feb. 4, 2004, petition, exhibit B).
On September 10, 2004, the DEC denied the FOIL request, explaining that
“Public Officers Law (POL) § 87.2 (b) permits an agency to deny access to records or portions thereof that[,] if disclosed, would constitute an unwarranted invasion of personal privacy under the provisions of POL § 89.2. In the interest of protecting the privacy of sporting license permitees, your request is denied” (Earl letter, Sept. 10, 2004, petition, exhibit D).
On October 8, 2004, petitioner administratively appealed the DEC’s denial of her FOIL request to respondent Mr. Louis Alexander, Assistant Commissioner, Office of Hearings and Mediation Services. On October 12, 2004, the Assistant Commissioner informed petitioner that the appeal had been received and was being reviewed. Thereafter, on January 14, 2005, the Assistant Commissioner corresponded with petitioner regarding her FOIL request. The Assistant Commissioner acknowledged that the DEC “had provided the State Assembly with similar information” in prior years (Alexander letter, Jan. 14, 2005, petition, *264 exhibit G). The Assistant Commissioner, however, explained that,
“within the past two years, the [DEC] has installed a new database system, referred to as the DEC Automated Licensing System or ‘DECALS’, to maintain information on sporting licenses and permits, including deer management permit applications. Prior to installation, the [DEC] considered the extent to which the database, which contains personal information on each licensee, may be accessible pursuant to FOIL. Due attention was given to FOIL’S intent to ensure public access to the records of government, but similarly due attention was given to the protections established in FOIL to prevent the release of the information that would constitute an unwarranted invasion of personal privacy” (id.).
The Assistant Commissioner went on to explain that requests for DECALS have been recently denied but, in light of petitioner’s appeal, the DEC had “undertaken to review issues relating to public access to the DECALS database” (id.).
On February 11, 2005, the DEC affirmed the prior denial of the FOIL request. After setting forth the privacy provisions contained in the relevant portions of the Public Officers Law, the DEC noted that it had “reevaluated the degree of public access appropriate to the DECALS database and considered whether the existing policy of protecting such personal information should be altered or modified” (determination, Feb. 11, 2005, petition, exhibit H). The DEC noted the “license details” on the database include: an individual’s first and last name, middle initial, suffix, gender, height, eye color, date of birth, driver’s license number, customer identification number, state residency, notation of blindness, military status, permanent military disability of 40% or more, fulfillment information, preference points, e-mail address, residential address, and telephone number (see id.). The DEC further noted: “As the listing of these entries indicates, the database contains considerable personal information, including intimate details relating to personal matters (such as medical conditions and physical attributes), the release of which could lead to an unwanted intrusion on an individual’s privacy” (id.). The DEC also recognized that “the computerized nature of this database and release in that format provides an ease of dissemination and exchange of such information which implicates privacy considerations” (id.).
*265 Thereafter, the DEC noted it must balance the competing interests of public access versus individual privacy. The DEC found significant that “the information in the database relates to and arises from a voluntary recreational activity, and not from the permitting or operation of a regulated business or commercial activity” (id.). Moreover, the DEC noted that “the information in the database includes personal information which does not relate to governmental decision — or policy— making” (id.). The DEC concluded that, after undertaking its reevaluation of the privacy concerns, it “continues to hold the view that the information is of such personal nature that it should be withheld on personal privacy grounds pursuant to [Public Officers Law] § 87 (2) (b)” (id.).
In support of its conclusion, the DEC cited concerns that, if disclosed, the database information could endanger the life and safety of individuals. The DEC reasoned:
“It is beyond doubt that the right to maintain personal privacy includes the obligation of government to ensure personal security. At a time of growing private and governmental recognition and concern about ‘identity theft’ and its serious impact on the personal and financial lives of individuals across the country, releasing an extensive amount of an individual’s personal information poses substantial risk that [his or her identity] may be appropriated for illegal purposes and illicit financial gain” (id.).
Again, the DEC commented on the electronic format of the DECALS database that is easily transmitted to others beyond the initial recipient. Based on the information within the database and its form of dissemination, the DEC determined that “a rational basis exists for the Department to have discontinued past practice and to no longer disclose any such information on holders of sporting permits and licenses” (id.). The DEC noted that it has established procedures, however, to allow law enforcement agencies, courts, and other interested persons to inquire whether an individual holds a sporting license. Finally, the DEC cited relevant legal authority — both in case law and agency advisory opinions — to support its determination to deny the FOIL request. Petitioner now seeks review of this determination.
As a threshold matter, petitioner contends that the DEC failed to timely respond to her FOIL request. Petitioner argues that *266 the untimely response violates Public Officers Law § 89 (3), which provides that an agency must respond to a FOIL request within five business days of such request. Further, petitioner contends that the DEC failed to timely respond to her administrative appeal pursuant to Public Officers Law § 89 (4), which provides that an agency has 10 business days after receipt of an appeal to “fully explain in writing to the person requesting the record the reasons for further denial, or provide access to the record sought.” Here, the DEC does not dispute this claim, but, as this court agrees, the DEC notes that “petitioner’s remedy was to commence this [CPLR article 78] proceeding for a review of the determination” (Matter of DeCorse v City of Buffalo, 239 AD2d 949, 950 [4th Dept 1997]; see Matter of Burtis v New York City Police Dept., 294 AD2d 315, 315 [1st Dept 2002], lv denied 98 NY2d 612 [2002]). Since petitioner has commenced this CPLR article 78 proceeding, any argument she has regarding the timeliness of the DEC’S response is rendered academic.
Next, petitioner contends that, since the DEC disclosed the sought after information in 2003, it has waived any objections to disclosure of the same information this year. While the DEC concedes that, in 2003, it released the subset of DECALS relating to the DMP application file to the Assembly, it contends this was an error. The DEC maintains that its policy with regard to disclosure from DECALS was being revised and the database should not have been disclosed. Given the circumstances here, this court rejects petitioner’s argument that the DEC waived its objections to disclosure of information from DECALS in 2004 (see Matter of Scaccia v New York State Div. of State Police, 138 AD2d 50, 53 [3d Dept 1988], citing Granada Bldgs, v City of Kingston, 58 NY2d 705 [1982]).
As to the merits, petitioner contends that she seeks public records that are subject to mandatory disclosure pursuant to FOIL. Petitioner argues that disclosure of the DMP application file to the New York State Assembly would not constitute an unwarranted invasion of personal privacy requiring a denial of her FOIL application. Petitioner notes that the “custom and practice of the Assembly [has been] to procure data from various state agencies and departments for the purpose of general communication, such as proposed or enacted legislation and/or public hearings regarding the same” (petition 114).
As the Court of Appeals recently reiterated, “ ‘[t]he Legislature enacted FOIL to provide the public with a means of access to governmental records in order to encourage public awareness *267 and understanding of and participation in government and to discourage official secrecy’ ” (Matter of Beechwood Restorative Care Ctr. v Signor, 5 NY3d 435, 440 [2005], quoting Matter of Alderson v New York State Coll, of Agric. & Life Sciences at Cornell Univ., 4 NY3d 225, 230 [2005]). In addition, an “agency’s records ‘are presumptively open to public inspection, without regard to need or purpose of the applicant’ ” (id. [quoted case omitted]; see Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 156 [1999]). Thus, “[w]hen faced with a FOIL request, an agency must either disclose the record sought, deny the request and claim a specific exemption to disclosure, or certify that it does not possess the requested document and that it could not be located after a diligent search” (Matter of Beechwood Restorative Care Ctr. at 440-441 [2005]). Moreover, any claimed exemption is “to be narrowly construed, with the burden resting on the agency to demonstrate that the requested material indeed qualifies for exemption” (Matter of Hanig v State of N.Y. Dept. of Motor Vehs., 79 NY2d 106, 109 [1992]).
First, the DEC notes that some confusion exists as to what exactly petitioner is seeking. Petitioner’s FOIL demand seeks the DMP application file, but, as discussed earlier, the DEC no longer maintains that as a separate file. The DEC now maintains DECALS, which has information about all hunting, fishing, and trapping licenses, as well as subscribers to the DEC’s magazine. Accordingly, the DEC maintains that it will treat petitioner’s request as a request for the subset of DECALS file relating solely to hunters who have applied for a DMP This court agrees this is a reasonable interpretation of petitioner’s FOIL request since she originally sought the DMP application file in that request.
As to that request, the DEC primarily argues that disclosure here would constitute an unwarranted invasion of personal privacy. The DEC explains that DECALS contains a broader range of personal information on each individual listed in the program than was maintained in the DMP application file. The DEC notes that this personal information includes the residential address of individuals and other personal identifying information. The DEC argues that courts have held that disclosure of such information would constitute an unwarranted invasion of personal privacy.
Public Officers Law § 87 (2) (b) “permits an agency to deny a FOIL request for records that would amount to an unwarranted *268 invasion of personal privacy under the provisions of section 89 (2) if disclosed” (Matter of Pennington v Clark, 16 AD3d 1049, 1051 [4th Dept 2005], lv denied 5 NY3d 712 [2005]; see Public Officers Law § 87). Further, Public Officers Law § 89 (2) (b) provides:
“An unwarranted invasion of personal privacy includes, but shall not be limited to:
“i. disclosure of employment, medical or credit histories or personal references of applicants for employment;
“ii. disclosure of items involving the medical or personal records of a client or patient in a medical facility;
“iii. sale or release of lists of names and addresses if such lists would be used for commercial or fund-raising purposes;
“iv. disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it; or “v. disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency; or “vi. information of a personal nature contained in a workers’ compensation record, except as provided by section one hundred ten-a of the workers’ compensation law” (emphasis supplied).
When determining whether disclosure would, under the circumstances, constitute an unwarranted invasion of personal privacy that is not expressly listed in Public Officers Law § 89 (2), a court is required to balance “the competing interests of public access and individual privacy” (Matter of Pennington, 16 AD3d at 1051; see Matter of Hanig, 79 NY2d at 112; Matter of Empire Realty Corp. v New York State Div. of Lottery, 230 AD2d 270, 273 [3d Dept 1997]). Moreover, “ ‘[wjhat constitutes an unwarranted invasion of personal privacy is measured by what would be offensive and objectionable to a reasonable [person] of ordinary sensibilities’ ” (Matter of Empire Realty Corp., 230 AD2d at 273, quoting Matter of Dobranski v Houper, 154 AD2d 736, 737 [3d Dept 1989]).
The DEC argues that, in balancing petitioner’s interests against the privacy concerns of the individuals whose records *269 are contained in DECALS, the sought after records should not be disclosed. The DEC contends that no governmental purpose is served by disclosing the personal information at issue here. Rather, the DEC contends that FOIL is designed to exempt certain personal information about private citizens from being disclosed (see Matter of Federation of N.Y. State Rifle & Pistol Clubs v New York City Police Dept., 73 NY2d 92, 97 [1989]).
As the DEC notes, the information contained in DECALS includes the license holder’s first and last name, middle initial, suffix, gender, height, eye color, date of birth, driver’s license number, customer identification number, state residency, notation of blindness, military status, permanent military disability of 40% or more, fulfillment information, preference points, e-mail address, residential address, and telephone number. Disclosure of this type of information in a variety of settings has been held to be an unwarranted invasion of privacy (see e.g. Matter of Federation of N.Y. State Rifle & Pistol Clubs, 73 NY2d at 92; Matter of Scott, Sardano & Pomeranz v Records Access Officer of City of Syracuse, 65 NY2d 294 [1985]; Matter of Beyah v Goord, 309 AD2d 1049 [3d Dept 2003]; Matter of Empire Realty Corp., 230 AD2d at 270; Matter of Buffalo Teachers Fedn. v Buffalo Bd. of Educ., 156 AD2d 1027 [4th Dept 1989]; Dobranski, 154 AD2d at 737-738; Matter of Lyon v Dunne, 180 AD2d 922 [3d Dept 1992]).
Petitioner contends that, where courts have disallowed disclosure of residential addresses or other such personal information at issue here, such information was not the primary focus of the FOIL request. Here, in contrast, petitioner argues that the name and residential information is the primary focus of the request. Petitioner maintains that, in a situation like here, disclosure of the type of information requested by her has been favored. To support this argument, petitioner relies on advisory opinions from the Committee on Open Government (hereinafter, COG). In her memorandum of law, petitioner asserts that the COG issued her an advisory opinion based on the salient facts in the request at issue in this proceeding. Petitioner claims that the COG recommends disclosure of the DMP file.[3] As a preliminary matter, this court notes that petitioner has *270 failed to supply this court with a copy of the alleged advisory opinion and, equally important, has failed to describe the “salient facts” given to the COG upon which it allegedly based such a determination. Thus, this court places no weight on this alleged advisory opinion.
Petitioner submits an advisory opinion from the COG that discusses whether information relating to a single “Furbearer Possession Tag” maintained by the DEC should be disclosed. Like here, the DEC denied access to the record on the grounds that such disclosure would constitute an unwarranted invasion of privacy. The COG concluded that the record should be disclosed with some information redacted. The crux of the opinion rests on the COG’s reasoning that, historically, information pertaining to licensing has been available to the public to ensure the public that the person entitled to hold the license is qualified to engage in the activity for which the license is issued. The COG discussed different professional licenses such as those held by a physician, lawyer, architect, social worker, and those for other work activities such as real estate sales and cosmetology. The COG found a trapping license to be analogous to these types of licenses, reasoning that disclosure of a trapping license would ensure the public that the person holding it “may take and possess certain species of animals in the state” (COG Advisory Op, Sept. 19, 2001). Interestingly, the COG found that not all the information on the furbearer possession tag should be disclosed, noting that the birth date was “uniquely personal” and, therefore, not disclosable (see id.). Moreover, the COG found that disclosure of an address — if a residential address — would also constitute an unwarranted invasion of privacy {see id.).
First, this court disagrees with petitioner that it must accept this authority as binding unto this court. As the Court of Appeals noted in Matter of Buffalo News v Buffalo Enter. Dev. Corp., “the advisory opinions of the Committee on Open Government are ‘neither binding upon the agency nor entitled to greater deference in an article 78 proceeding than is the construction of the agency’ ” (84 NY2d 488, 493 [1994]). Thus, while this court may consider an advisory opinion, it is not bound by such an opinion.
This court agrees with the COG furbearer possession tag advisory opinion to the extent that it highlights that certain information in the application — such as a birth date and residential address — would, if disclosed, be an unwarranted invasion of *271 privacy (see Matter of Empire Realty Corp., 230 AD2d at 273). However, this court disagrees that certain information should be disclosed based on the DEC’s issuance of a license. In other words, this court does not find analogous the disclosure of certain information due to a professional/work-related license and that of a license obtained to participate in a recreational activity — such as hunting, fishing or trapping. Whereas the professional/work-related license signals to society that the person is qualified to participate in the profession for which the license is required, a hunting, fishing or trapping license, on the other hand, is primarily issued as part of the DEC’s obligation to conserve and manage fish and wildlife in the state (see generally ECL art 11). Specifically, with regard to DMPs, Environmental Conservation Law § 11-0913 (1) (a) permits the DEC to issue DMPs when it determines that an “additional harvest of deer is reasonably necessary to properly manage the deer herd in the state in balance with the available deer range and natural food supply.”
Moreover, tension exists in balancing a request for disclosure against privacy interests in determining a FOIL request for information from a license application that is issued for professional/work-related purposes (see e.g. Sims v Central Intelligence Agency, 642 F2d 562, 572-575 [US Ct App, DC 1980]; American Broadcasting Cos. v Siebert, 110 Misc 2d 744, 749-750 [Sup Ct, NY County 1981]). For instance, in American Broadcasting Cos., respondent applied to the Banking Department to become a check-cashing licensee. There, the court noted that respondent’s license would be used to serve the public-at-large, and, thus, respondent should have reasonably expected that the information on its application would be available to the public (see American Broadcasting Cos., 110 Misc 2d at 749-750). However, even in that case, the court noted that the holder’s residential address was not critical to serve the public interest and would present an unwarranted invasion of personal privacy if disclosed (see id. at 750, 752). Here, as discussed above, the DMP applications at issue were submitted for recreational hunting — not for professional licenses. Thus, the balance of interest should fall even further on the side of preventing disclosure of private information that would constitute an unwarranted invasion of privacy to the license holders. Accordingly, since the applications at issue here contain such personal information, this court declines to direct such disclosure.
Moreover, relying on Public Officers Law § 87 (2) (f), the DEC alternatively argues that the FOIL request should be denied *272 because such disclosure would create a safety risk. The DEC contends that disclosure of the sought after applications would reveal the residential addresses of individuals who potentially have firearms in their residences since individuals in the subset of DECALS seeking DMPs have hunting licenses and necessarily own firearms. The DEC argues that this information, in the wrong hands, could put the safety of the license holders or others nearby in jeopardy.
In support of this argument, the DEC submits the affidavit of Gerald A. Barnhart who is the Director of Fish, Wildlife and Marine Resources, which is a division of the DEC. In that role and in his prior positions with the DEC, Mr. Barn-hart is familiar with the DEC’s licensing program. Mr. Barn-hart avers that,
“[b]ased on frequent consultation with anglers, hunters and trappers, I believe that most licensed sportsmen and women do not wish to have their home addresses disclosed since they do not wish to receive unsolicited mail or visits, whether from elected officials, interest groups or any individuals. Nor, where hunters are concerned, do they wish to have the locations of their firearms publicly available” (Barnhart affidavit 1i 25).
Section 87 (2) (f) provides that an “agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that ... if disclosed could endanger the life or safety of any person.” Moreover, the agency “need only demonstrate ‘a possibility of endanger[ment] ’ ” (Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of State Police, 218 AD2d 494, 499 [quoted case omitted]; see Matter of Stronza v Hoke, 148 AD2d 900, 901 [3d Dept 1989]). Here, this court agrees that disclosure of residential addresses containing firearms could potentially endanger the life or safety of such license holders or others (cf. Matter of American Socy. for Prevention of Cruelty to Animals v Board of Trustees of State Univ. of N.Y., 147 Misc 2d 847, 851 [Sup Ct, Suffolk County 1990]; American Broadcasting Cos., 110 Misc 2d at 751).
Finally, the DEC argues that disclosure should be prevented here because a risk of identity theft exists. In an affidavit submitted by Howard O. Cushing, Jr., the president of the New York State Conservation Council, Mr. Cushing avers that his or *273 ganization is concerned about identity theft stemming from disclosure of DECALS and urges this court to sustain the DEC’s position in this matter (Cushing affidavit 1I1Í17-18). Robert J. Monacchio, the chairman of the Conservation Fund Advisory Board and a licensed hunter and fisherman for nearly 50 years, avers:
“It is completely contrary to my expectations of privacy to treat my personal data, including my home address and telephone number as public information, and to release it to outside organizations and individuals ... I am also concerned that the release of the complete profile for the entire list of licensed sportsmen could lead to identity theft and other abusive illegal practices in individual cases” (Monacchio affidavit 1I1Í13, 16).
Petitioner characterizes this argument as “ludicrous,” contending that this is a mere ploy for a state agency to deny access to governmental records. This court, however, does not reach the same conclusion. “Identity theft, without question, is becoming one of the fastest growing criminal offenses in the 21st century. The Federal Trade Commission (FTC) estimates that in a five-year period prior to early 2003, in the United States alone, there were 27.3 million reported cases of identity theft” (Daly v Metropolitan Life Ins. Co., 4 Misc 3d 887, 892 [Sup Ct, NY County 2004] [citations omitted]). Disclosure of information such as a full name and date of birth can lead to such a problem (see id.). A Federal Trade Commission study estimates that a victim of identity theft spends an average of 30 to 60 hours straightening out difficulties arising from the crime (see id.). According to another source, however, it may take even longer to deal with the aftermath of identity theft. A survey conducted by Privacy Rights Clearinghouse, a private-interest group, determined that it takes “175 hours over two years, on average, for the victims to repair the damage done to their credit” as a result of an identity theft (Lee, Fighting Back When Someone Steals Your Name, New York Times, Apr. 8, 2001, § 3, at 8, col 2).
This court agrees with the DEC that a threat of identity theft exists here given the breadth of personal information contained in DECALS. As noted earlier, DECALS contains broader personal information than the former DMP application file, which simply, with the advent of DECALS, no longer exists. Moreover, the DEC has demonstrated that it does not *274 have the ability to reduce the information contained in DECALS to only the information that was formerly contained in the former DMP application database. In other words, the subset of the DECALS database that would now be disclosed would contain personal data that was not previously a part of the DMP application database. This is especially important given that petitioner seeks the information in a computer file format, which, this court notes, could be disseminated in a matter of seconds. “There is a difference between an electronic compilation in searchable form and records that can only be found by a diligent search through scattered files. The former presents a far greater threat to privacy” (Kurtz, The Invisible Becomes Manifest: Information Privacy in a Digital Age, 38 Washburn LJ 151, 156 [1998]). Moreover, online data brokers often collect information taken from public records and allow access in a searchable form, which potentially leads to abuse by identity thieves (see O’Harrow, Jr., Identity Thieves Thrive in Information Age: Rise of Online Data Brokers Makes Criminal Impersonation Easier, Washington Post, May 31, 2001, at A01). Petitioner fails to address these concerns and fails to acknowledge that the DMP application file the Assembly has historically requested simply no longer exists.
Petitioner states that the Assembly is willing to agree, as it apparently has done in the past, not to use the requested information or any portion thereof for commercial or fund-raising purposes and not to sell or transfer that information to another party for that same purpose. This proposed agreement, however, is not a guarantee that the information will not be disseminated — especially given the relative ease by which that could be done. Significantly, petitioner brings this action not only as an agent for the Assembly but also as a “citizen taxpayer.” Accordingly, disclosure under this petition would not only release personal information to the Assembly but also to a private citizen who is not bound by any proposed nontransfer agreement.[4] As the DEC notes, once the information is transmitted or released, the DEC loses any control over this database *275 containing personal identifying information on thousands of New York residents. Thus, for this reason and the other reasons discussed in this decision, this court denies the relief requested by petitioner.
Accordingly, it is ordered that the relief sought in the petition is denied; and it is further ordered that the petition is dismissed.

. This court notes that this proceeding has been adjourned on three occasions, twice at the request of respondents to allow them to obtain outside counsel and once at the request of petitioner to allow for extra time to serve a reply, rendering September 30, 2005 the return date for this proceeding.

. If need be demonstrated in a given year, a preset number of DMPs are issued in New York to applicants who are licensed deer hunters. A DMP entitles the holder to take a female deer during the set hunting period — in addition to the one male deer allowed under the normal hunting license (see ECL 11-0913). In 2004, approximately 363,000 hunters applied for DMPs. Applicants for a DMP were required to apply to the DEC’s headquarters in Albany.

. Petitioner does not state whether the alleged advisory opinion was issued in a written format or given orally. In their memorandum of law, respondents state that the alleged advisory opinion was given during a phone conversation apparently between counsel for petitioner and a representative of the COG.

. Moreover, this court notes that disclosure here to a citizen taxpayer could set a precedent for further disclosure to other individuals (cf. Matter of Beechwood Restorative Care Ctr. v Signor, 5 NY3d 435 [2005] [noting that an “agency’s records ‘are presumptively open to public inspection, without regard to need or purpose of the applicant’ ”] [quoted case omitted]).