NORTH CAROLINA ELECTRIC MEMBERSHIP CORPORATION, Plaintiff v. NORTH CAROLINA DEPARTMENT OF ECONOMIC AND COMMUNITY DEVELOPMENT, NORTH CAROLINA RURAL ELECTRIFICATION AUTHORITY, EVERETT ROBERSON, In His Official Capacity as Administrator Of The NORTH CAROLINA RURAL ELECTRIFICATION AUTHORITY, Defendants, and DUKE POWER COMPANY, Intervenor

No. 9110SC1173

(Filed 2 February 1993)

1. **Appeal and Error § 109 (NCI4th)— release of documents— denial of request for preliminary injunction— interlocutory appeal properly heard**

It was proper for the Court of Appeals to hear plaintiff's interlocutory appeal from the denial of its request for a preliminary injunction, since, without the preliminary injunction, plaintiff would be required to release the very documents in issue, and, with that done, there would be no reason to proceed with trial on the merits, the whole basis for such action already having been decided by plaintiff's compliance with the court order.

**Am Jur 2d, Appeal and Error § 80.**

N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.

[108 N.C. App. 711 (1993)]

Appealability of order pertaining to pretrial examination, discovery, interrogatories, production of books and papers or the like. 37 ALR2d 586.

2. Injunctions § 16 (NCI4th)— jurisdiction to issue injunctions to prevent disclosure of documents

There was no merit to defendant intervenor's contention that the courts have no jurisdiction to issue injunctions to prevent the disclosure of documents.

Am Jur 2d, Injunctions § 69.

Appealability of order refusing to grant or dissolving temporary restraining order. 19 ALR3d 403.

3. Unfair Competition § 4 (NCI3d)— no common law right to protection of trade secrets

Plaintiff failed to show a common law right to protection of trade secrets.

Am Jur 2d, Monopolies, Restraints on Trade, and Unfair Trade Practices § 704.

Discovery or inspection of trade secret or the like. 17 ALR2d 383.

4. Unfair Competition § 4 (NCI3d)— documents containing trade secrets—no evidence of misappropriation of secrets—no protection under Trade Secrets Protection Act

Though plaintiff electric membership corporation offered sufficient evidence to show that it was likely to succeed in establishing that documents it filed with the Rural Electrification Authority contained trade secrets, it offered no evidence of misappropriation of those secrets, and plaintiff therefore was not entitled to protection under the Trade Secrets Protection Act of 1981 from disclosure of those documents to a competitor. N.C.G.S. §§ 66-1522(3), 66-154(a).

Am Jur 2d, Monopolies, Restraints on Trade, and Unfair Trading Practices § 704.

Discovery or inspection of trade secret or the like. 17 ALR2d 383.

N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.

[108 N.C. App. 711 (1993)]

5. **State § 1.2 (NCI3d) — protection of documents under Public Records Act — no retroactive application**

   Where plaintiff electric membership corporation sought to protect documents filed with the Rural Electrification Authority in 1980, 1983 and 1987, applying an exemption of the Public Records Act enacted in 1989 which protected trade secrets would not constitute a retroactive application of the statute because the right at issue arose pursuant to defendant intervenor's request for disclosure in 1991, after enactment of the amendment, and not at the time the documents were originally submitted. N.C.G.S. § 132-1.2.

   **Am Jur 2d, Records and Recording Laws § 19.**

6. **State § 1.2 (NCI3d) — documents containing trade secrets — protection under Public Records Act**

   Plaintiff electric membership corporation produced sufficient evidence to establish a likelihood of success on the merits on its claim of protection under the trade secrets exemption of the Public Records Act for documents filed with the Rural Electrification Authority where plaintiff produced evidence that the documents likely contained trade secrets; the documents constituted the property of a private person as defined in N.C.G.S. § 66-152(2); the documents were furnished to a public agency in connection with the owner's application for federal funding; and the facts and circumstances surrounding this case could likely support a conclusion that the documents were "indicated," rather than "designated," to contain trade secrets at the time of their initial submission to the Rural Electrification Authority.

   **Am Jur 2d, Records and Recording Laws § 27.**

   **What constitutes "trade secrets" exempt from disclosure under state freedom of information act. 27 ALR4th 773.**

7. **Injunctions § 9 (NCI4th) — denial of preliminary injunction — irreparable harm**

   Where it might ultimately be determined that plaintiff's documents should not be disclosed, the denial of a preliminary injunction and subsequent disclosure of such documents would obviously result in irreparable harm.

   **Am Jur 2d, Injunctions § 48.**

N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.

[108 N.C. App. 711 (1993)]

Appeal by the plaintiff from Order entered 26 August 1991 by Judge Henry W. Hight, Jr. in Wake County Superior Court. Heard in the Court of Appeals 23 October 1992.

> *Moore & Van Allen, by Joseph W. Eason and Denise Smith Cline, for plaintiff-appellant.*

> *Attorney General Lacy H. Thornburg, by William W. Finlator, Jr., Associate Attorney General, and Jo Anne Sanford, Special Deputy Attorney General, for defendants-appellees.*

> *Kennedy, Covington, Lobdell & Hickman, by James P. Cooney III and Myles E. Standish, for intervenor-appellee.*

WYNN, Judge.

The basis of this appeal concerns documents filed by the plaintiff, North Carolina Electric Membership Corporation ("NCEMC"), with the defendant, North Carolina Rural Electrification Authority ("NCREA"), which documents the intervenor, Duke Power Company ("Duke"), has requested be disclosed pursuant to the Public Records Act. *See* N.C. Gen. Stat. § 132-6 (1991).

NCEMC is a cooperative electric membership corporation which provides electric energy at wholesale prices to twenty-seven members, which in turn supply electricity to approximately 500,000 North Carolina retail customers. Electric membership corporations such as NCEMC, when applying for federal funds, are required by statute to apply through NCREA rather than with the federal agencies directly. *See* N.C. Gen. Stat. § 117-26 (1986). Pursuant to this requirement, NCEMC filed certain documents with NCREA over a period of years. Duke requested disclosure of these documents alleging that they are public records and as such must be disclosed pursuant to North Carolina's Public Records Act.

Duke and NCEMC are competitors in the wholesale purchase and sale of bulk power, and Duke, in fact, provides some power and related services to NCEMC. Duke constructed the Catawba Nuclear Station ("Catawba") in the 1970's and 1980's. In an agreement which required Duke to buy back a portion of the power generated, Duke sold part of Catawba to NCEMC. In one of many arbitration proceedings to which the two are adverse parties, Duke and NCEMC have been arbitrating a contractual dispute arising out of the purchase and sale of Catawba. In that proceeding, the arbitrator entered a protective order to resolve a dispute regarding

N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.

[108 N.C. App. 711 (1993)]

documents similar to those in the present case. The protective order granted a limited number of Duke personnel authority to review certain documents, but prohibited the use or disclosure of the documents for any purpose other than the arbitration. In the course of this arbitration Duke requested that the federal Rural Electrification Authority release, pursuant to the Freedom of Information Act, certain documents deposited with it by NCEMC. From refusal of that request, Duke appealed. That appeal is currently pending in the federal district court for the Western District of North Carolina.

On 11 January 1991, NCREA received a request from Duke for disclosure of the three documents which are the subject of the present appeal: 1) NCEMC Long Range Financial Forecast and Member Rate Forecast for Mobile Substation Programs (October 1987); 2) Summary of Feasibility Studies in Support of Deficiency Loan for Participation in Catawba (June 1983); 3) Financial Forecast for NCEMC-Catawba (September 1980). The Financial Forecast for NCEMC-Catawba was the only one of the three documents specifically designated as "Confidential" when it was submitted to NCREA.

NCREA notified NCEMC of Duke's request and asked for a response. NCEMC expressed its belief that the documents were protected because they contained trade secrets which are exempt from the Public Records Act. Duke, in turn, was permitted to respond to NCEMC's claim. To resolve the dispute over the documents, NCREA, through the Office of the Attorney General, held a meeting of all parties involved and conducted an item by item review of the documents in question. Subsequent to this meeting, NCREA issued its decision that the NCEMC Long Range Financial Forecast and Member Rate Forecast for Mobile Substation Programs (October 1987) and the Summary of Feasibility Studies in Support of Deficiency Loan for Participation in Catawba (June 1983) could be disclosed but that the Financial Forecast for NCEMC-Catawba (September 1980) was exempted from disclosure as containing trade secrets.

NCREA set 12 July 1991 as the disclosure date, but on 11 July 1991 NCEMC obtained a temporary restraining order barring such disclosure. At that time Duke intervened as a party defendant. On 2 August 1991 a hearing was held on NCEMC's Motion for a Preliminary Injunction. From denial of that motion, NCEMC appealed.

**N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.**

[108 N.C. App. 711 (1993)]

## I.

[1]  The denial of a preliminary injunction is interlocutory and as such an appeal to this Court is not usually allowed prior to a final determination on the merits. However, review is proper if "such order or ruling deprives the appellant of a substantial right which he would lose absent a review prior to final determination." *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983). The present case involves a substantial right that the appellant may lose if review is not undertaken at this time. Without the preliminary injunction, the NCREA would be required to release the NCEMC documents at issue to Duke. With that done, there would be no reason to proceed with a trial on the merits, the whole basis for such action already having been decided by the appellant's compliance with the court order. It is proper, therefore, for this Court to hear the interlocutory appeal from the denial of NCEMC's request for a preliminary injunction.

[2]  The defendant intervenor, Duke, asserts that there is no jurisdictional provision which allows NCEMC to bring this action. We cannot agree with Duke that the courts have no jurisdiction to issue injunctions to prevent the disclosure of documents. While we recognize the strong policy in favor of disclosure, we must also be cognizant of the protection given certain documents that would otherwise be considered Public Records. The fact that the statute provides an exemption for certain documents leads this Court to the logical conclusion that those claiming that their documents are exempt must have some recourse in our court system. To conclude otherwise, we believe, would offer no protection from agency error or from an agency's abuse of its discretion. We, therefore, hold that this issue is properly presented for resolution in the court system.

## II.

Although the appellant, NCEMC, sets forth seven assignments of error, there is but one issue that this Court must resolve on appeal. That is, did the trial court properly deny appellant's motion for a preliminary injunction. For the reasons that follow, we conclude that it did not.

The burden of proof in a case regarding a preliminary injunction is on the plaintiff, the presumption being that the decision of the trial court is correct. *Huggins v. Wake County Bd. of Ed.*,

IN THE COURT OF APPEALS 717

N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.

[108 N.C. App. 711 (1993)]

272 N.C. 33, 41, 157 S.E.2d 703, 708 (1967). This Court is not, however, bound by the findings of the trial court and may essentially review the case *dé novo. Iradell Digestive Disease Clinic v. Petrozza,* 92 N.C. App. 21, 26, 373 S.E.2d 449, 452 (1988), *aff'd,* 324 N.C. 327, 377 S.E.2d 750 (1989).

In general, a preliminary injunction will issue where 1) the plaintiff is able to show a likelihood of success on the merits of the case, *and* 2) the plaintiff is likely to suffer irreparable harm, or, in the opinion of the court, the injunction is necessary to protect the plaintiff's rights during the course of the litigation. *McClure,* 308 N.C. at 401, 302 S.E.2d at 759-60.

In determining whether the plaintiff in the case at bar has shown a likelihood of success on the merits, we must examine the law related to the disclosure of public documents. The appellant basically sets forth three bases upon which it believes it has a substantial likelihood of success on the merits: 1) The documents are protected under common law; 2) The documents are protected under statutory trade secret law prior to 1989; and 3) The documents are protected under the 1989 exception to the Public Records Act. We examine each of these in turn and conclude that the appellant has met its burden of showing that it is likely to succeed on the merits.

1. Common Law Protection

[3] With regard to common law protection, the plaintiff contends that, based on the decision in *S.E.T.A. UNC-CH, Inc. v. Huffines,* 101 N.C. App. 292, 399 S.E.2d 340 (1991), protection for trade secrets existed at common law. While our research indicates that some type of protection for trade secrets may have existed at common law, the extent of that protection is not clearly defined. *See generally North Carolina Trade Secrets Protection Act,* 18 Wake Forest L. Rev. 823 (1982). Appellant argues that *S.E.T.A.* recognizes a common law right to protection of trade secrets. We, however, find appellant's analysis of that case to be erroneous, in that any rights recognized by the *S.E.T.A.* Court derived from the trade secret exemption under the Public Records Act. We likewise conclude that if appellant in the case at bar has any right to block the disclosure of alleged trade secrets, that right arises under the Public Records Act.

718 IN THE COURT OF APPEALS

N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.

[108 N.C. App. 711 (1993)]

## 2. Trade Secrets Protection Act

[4] Appellant next contends that it enjoyed protection under the Trade Secrets Protection Act of 1981. N.C. Gen. Stat. §§ 66-152 — 66-162 (1992). Specifically, appellant contends that its documents contain "trade secrets" as defined by N.C. Gen. Stat. § 66-152(3), which provides:

> "Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In support of its motion for a preliminary injunction, appellant submitted evidence including an affidavit of its consultant, Anis Sherali, and a verified complaint. This evidence tends to show that the documents at issue contain valuable business information such as NCEMC's projections of its electric rates for sales to its members and its methodologies for forecasting such price information. Moreover, NCEMC contends that this information would be of actual value to Duke and to its other competitors and would cause irreparable competitive harm to NCEMC.

We find that this evidence was sufficient to show that appellant is likely to succeed in establishing that the documents at issue contain trade secrets. However, a cause of action under the Trade Secrets Protection Act requires proof of a "misappropriation" of trade secrets. *See id.* § 66-154(a).

N.C. Gen. Stat. § 66-152(1) defines "misappropriation" as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." The elements of an action for misappropriation are "(1) [the defendant] knows or should have known of the trade secret; and (2) [the defendant] has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without

the express or implied consent or authority of the owner." *Id.* § 66-155(1)—(2). While the appellant presented sufficient evidence that it is likely to succeed in showing that the documents at issue contain trade secrets, it offered no evidence of misappropriation. Because appellant bears the burden of proof on the issuance of a preliminary injunction, this Court must conclude that appellant has failed to show a likelihood of success on the merits with respect to any claim brought pursuant to the Trade Secret Protection Act.

3. Public Records Act

[5] The Public Records Act, enacted in 1935, provides broad public access to certain documents classified as public records which are defined as documents "made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions." N.C. Gen. Stat. § 132-1 (1991). Prior to 1989, the statute made no mention of confidential documents or trade secrets. In 1989 the General Assembly amended the act to exclude trade secrets from disclosure requirements. Pursuant to the 1989 amendment, public agencies were neither required nor authorized to disclose a *document* which:

(1) Constitutes a "trade secret" as defined in G.S. § 66-152(3);

(2) Is the property of a private "person" as defined in G.S. § 66-152(2) (1985);

(3) Is disclosed or furnished to the public agency in connection with the owners performance of a public contract or in connection with a bid, application, proposal, or industrial development project; and

4) Is designated as "confidential" and/or as a "trade secret" at the time of its initial disclosure to the public agency.

N.C. Gen. Stat. § 132-1.2 (1989).

Generally, "a statute will be given retroactive application only when it clearly appears that to do so was the intent of the legislature." *Perry v. Perry*, 80 N.C. App. 169, 172, 341 S.E.2d 53, 55, *dis. rev. allowed*, 317 N.C. 336, 346 S.E.2d 502 (1986), *appeal dismissed*, 320 N.C. 170, 357 S.E.2d 925 (1987). Although the documents at issue here were filed with NCREA in 1980, 1983 and 1987, applying this exemption does not constitute a retroactive application of the statute because the right at issue arose pursuant to Duke's

N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.

[108 N.C. App. 711 (1993)]

request for disclosure in 1991, after enactment of the amendment, and not at the time the documents were originally submitted. To find otherwise would put entities in the illogical position of having to recover and resubmit documents filed with state agencies prior to 1989 in order to obtain the protection of the 1989 amendment.

[6]  Appellant contends that the documents at issue meet the requirements of the exemption. As discussed previously, appellant has shown a likelihood of success in establishing that the documents contain "trade secrets" as defined by N.C.G.S. § 66-152(3), thereby meeting the first prong of the exemption requirements. Further, there is no dispute regarding the second and third prongs, that the documents constitute the "property of a private person as defined in G.S. § 66-152(2)", and that they were "furnished to the public agency . . . in connection with [the owner's] . . . application [for federal funding]." Finally, appellant argues that it has met the fourth prong of the exemption requirements: that the document was "designated as 'confidential' and/or as a 'trade secret' at the time of its initial disclosure to the public agency." This prong was amended in July 1991, altering the language to read that a document be "designated *or indicated* as 'confidential or as a 'trade secret'. . . ."

Amendments to a statute either act to change the law or to clarify the law. *Childers v. Parker's Inc.*, 274 N.C. 256, 260 162 S.E.2d 481, 483 (1968). While the presumption is that the legislature intended to change the law through its amendments, where the language of the original statute is ambiguous such amendments may be deemed, not as a change in the law, but as a clarification in the language expressing that law. *Id.* at 260, 162 S.E.2d at 483-84. In the present case, the addition of the language "or indicated" acts to clarify the otherwise ambiguous word "designated." As such, any application of this statute either before or after 1991, should interpret the word "designated" as meaning "designated or indicated."

Appellant argues that the documents at issue, upon initial disclosure to NCREA, were "indicated" as containing "trade secrets." We find, as alleged by NCEMC, that the facts and circumstances surrounding this case may be likely to support a conclusion that the documents were "indicated" to contain trade secrets at the time of their initial submission to NCREA. This is further evidenced by NCREA's request for a response from NCEMC regard-

N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.

[108 N.C. App. 711 (1993)]

ing Duke's petition for disclosure. By requesting a response, NCREA acknowledged that the documents may contain trade secrets or other confidential information that could prove damaging to NCEMC if disclosed to Duke.

We conclude that the appellant has produced sufficient evidence to establish a likelihood of success on the merits on its claim of protection under the Public Records Act as amended in 1989 and 1991.

### III.

[7]  We also conclude that the appellant has shown that it is likely to suffer irreparable harm if the preliminary injunction does not issue. In examining this second requirement for a preliminary injunction, the courts of North Carolina have "consistently adhered to the proposition that where the principal relief sought is a permanent injunction, it is particularly necessary that the preliminary injunction issue." *McClure*, 308 N.C. at 408, 302 S.E.2d at 763. It is clear that the disclosure of the documents, which will result from the denial of the preliminary injunction, will cause irreparable harm to the appellant. The merits of the case will be decided without a hearing and the appellant will be deprived of any remedy or relief it may have received at trial if the preliminary injunction is granted. The whole basis of a trial on the merits in the case at bar regards whether the documents in question should be released. Once those documents are released they cannot be unreleased. Where it might ultimately be determined that appellant's documents should not be disclosed, the denial of a preliminary injunction and subsequent disclosure of such documents would obviously result in irreparable harm.

For the foregoing reasons, the decision of the trial court denying appellant's motion for a preliminary injunction is reversed and remanded for entry of a preliminary injunction pending a trial on the merits.

Judges GREENE and WALKER concur.

Judge WALKER concurred in this opinion prior to 8 January 1993.