WILMINGTON STAR-NEWS, INC. D/B/A THE WILMINGTON MORNING STAR v. NEW HANOVER REGIONAL MEDICAL CENTER, INC., A NON-PROFIT CORPORATION D/B/A NEW HANOVER REGIONAL MEDICAL CENTER v. PHP, INC.

No. COA96-542

(21 January 1997)

**1. Records of Instruments, Documents, or Things § 4 (NCI4th)— hospital price lists—Public Records Act—not a private document**

A summary judgment for plaintiff newspaper which ordered disclosure of an HMO's price lists by defendant hospital was affirmed where the hospital (Medical Center), which admits that it is a public hospital subject to the North Carolina Public Records Act, and the HMO (PHP) negotiated a hospital participation agreement; the agreement specified that the terms of the agreement were confidential; price lists were included as appendices; the plaintiff requested a complete copy of the agreement; the hospital delivered a copy which did not include the appendices; plaintiff sought access under the Public Records Act; the

hospital filed a third party complaint against the HMO seeking reimbursement of fees and expenses; the HMO responded with a counterclaim seeking a declaratory judgment that the price lists are trade secrets and not subject to disclosure; and the trial court granted plaintiff's motion for summary judgment, ordered immediate disclosure, and subsequently stayed enforcement of that order pending appeal. A reasonable trier of fact could conclude that the price lists constitute trade secrets; however, the information must also be the property of a private person as defined by N.C.G.S. § 132-1.2 in order to be exempted from disclosure. The plain language suggests a legislative intent to limit this exclusion to nongovernmental agencies, it is not disputed that the hospital is a governmental agency within the meaning of the Public Records Act, and it would defy logic to insist that negotiated price lists belong solely to the HMO and not also to the hospital. Because the price lists are not the property of a single person with the meaning of N.C.G.S. § 132-1.2(2), the respondents are not entitled to the benefit of the statutory exemption from disclosure.

**Am Jur 2d, Records and Recording Laws §§ 1-7.**

**2. Appeal and Error § 187 (NCI4th)— Public Records Act— order of disclosure—trial court stay pending appeal**

The trial court possessed the legal authority to stay its own orders pending appeal in a case under the Public Records Act involving a price list negotiated between a public hospital and an HMO. Plaintiff newspaper cited no authority for its contention that the general principals of civil procedure do not apply in Public Records Act litigation unless specifically incorporated in the text of the statutes and fails to consider that statutes in derogation of the common law and statutes depriving courts of jurisdiction are strictly construed. N.C.G.S. § 1A-1, Rule 62(d).

**Am Jur 2d, Appellate Review §§ 143, 144.**

Appeal by respondents from order entered 19 March 1995 by Judge Ernest B. Fullwood in New Hanover County Superior Court. Heard in the Court of Appeals 7 October 1996.

Petitioner Wilmington Star-News, Inc. (Morning Star) is a North Carolina corporation that publishes The Wilmington Morning Star, a daily newspaper of general circulation serving New Hanover County and the surrounding area. Respondent New Hanover Regional Medical Center (Medical Center) is a nonprofit, full service, acute

care hospital located in New Hanover County, North Carolina. Medical Center admits that it is a public hospital subject to the North Carolina Public Records Act. Third-party respondent PHP, Inc. (PHP) is a North Carolina corporation authorized to operate a health maintenance organization under Article 67 of Chapter 58 of the North Carolina General Statutes. PHP operates an extensive managed health care organization (HMO) throughout North Carolina from its principal place of business in Guilford County, North Carolina.

In April 1994, Medical Center and PHP began negotiating the terms of a Hospital Participation Agreement wherein Medical Center promised to provide health care services to PHP members at certain specified prices. The agreement was to include price lists specifying the costs and reimbursement rates at which certain Medical Center services would be provided to participating PHP customers. In September 1994, Susan B. Craft, Vice President of Operations of PHP, provided a proposed Hospital Participation Agreement to Mr. James Eyerman, a representative of Medical Center, which included the proposed price lists for hospital services. Section 10.8 of the proposed agreement specified that the terms of the agreement were confidential between Medical Center and PHP and that the terms shall not be divulged to anyone not a party to the agreement. Ms. Craft also advised Mr. Eyerman that the particular pricing information included in the agreement was confidential and should not be disclosed. Medical Center, through Mr. Eyerman, agreed to protect the confidentiality of the agreement. On 7 November 1994, Medical Center and PHP executed a Hospital Participation Agreement effective 1 January 1995 and expiring 31 December 1997. Attached to that agreement were several appendices listing the negotiated prices for hospital services.

On 9 January 1995, Morning Star requested Medical Center to provide a complete copy of the agreement between Medical Center and PHP from the hospital, including the appendices containing the price lists. Medical Center contacted PHP before providing any information to Morning Star. PHP advised Medical Center that the confidential pricing information contained in the appendices to the agreement were trade secrets of PHP and that disclosure of that information to Morning Star may subject Medical Center to liability for misappropriation for trade secrets. On 18 January 1995, Medical Center delivered to Morning Star a copy of the agreement but did not include the appendices containing the price lists designated as trade secrets by PHP.

**WILMINGTON STAR NEWS v. NEW HANOVER REGIONAL MEDICAL CENTER**

[125 N.C. App. 174 (1997)]

On 17 May 1995, Morning Star filed an Application for an Order Compelling Disclosure of Public Records in New Hanover County Superior Court seeking access to the appendices pursuant to the North Carolina Public Records Act. Medical Center responded and filed a third party complaint against PHP requesting reimbursement of any fees and expenses assessed against it as a result of this litigation. PHP responded with a Counterclaim for Declaratory relief requesting that the trial court enter an order declaring that the subject price lists are trade secrets and not subject to disclosure under the Public Records Act. Morning Star and PHP both moved the court for summary judgment. On 19 March 1995 the trial court denied PHP's motion for summary judgment and granted summary judgment for Morning Star and ordered immediate disclosure of the price lists to Morning Star. Medical Center sought an order staying enforcement of the judgment pending appeal. On 20 March 1995 the trial court granted the requested stay delaying enforcement of its earlier order pending appeal. PHP and Medical Center now appeal the trial court's order granting summary judgment to Morning Star and requiring Medical Center to disclose the price lists. Morning Star appeals the trial court's stay order.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Mark J. Prak and Marcus W. Trathen, for petitioner-appellee Wilmington Star-News, Inc.*

*Marshall, Williams & Gorham, L.L.P., by A. Dumay Gorham, Jr., for respondent-appellant New Hanover Regional Medical Center.*

*Newson, Graham, Hedrick & Kennon, P.A., by Joel M. Craig and Michelle B. Beischer, for respondent-appellant PHP, Inc.*

EAGLES, Judge.

*PHP's Appeal*

[1] This case of first impression presents the issue of whether price lists in a contract between a public hospital and a private HMO are trade secrets as defined by G.S. 66-152 and not subject to disclosure under the North Carolina Public Records Act pursuant to G.S. 132-1 *et seq.* (1995). Medical Center and PHP do not dispute that Medical Center is subject to the provisions of the Public Records Act; however, they argue, *inter alia,* that the information in dispute is excepted from the Act on the grounds that it concerns "competitive

health care activities" pursuant to G.S. 131E-97.3 (1993), or on the grounds that it constitutes "confidential information" pursuant to G.S. 132-1.2 (1989).

Our standard of review for summary judgment is whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *Aetna Casualty & Surety Co. v. Welch*, 92 N.C. App. 211, 212, 373 S.E.2d 887, 888 (1988). In ruling on a summary judgment motion, the court should consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. *See Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). The court must view the evidence presented by both parties in the light most favorable to the nonmoving party. *Id.* at 666, 449 S.E.2d at 242.

We note that in 1996 the General Assembly enacted G.S. 131E-99 (1995) of the Hospital Licensure Act entitled "Confidentiality of health care contracts." 1995 S.L. (Regular Session, 1996) c.713, s.2. G.S. 131E-99 provides as follows:

> The financial terms or other competitive health care information in a contract related to the provision of health care between a hospital and a managed care organization, insurance company, employer, or other payer is confidential and not a public record under Chapter 132 of the General Statutes.

However, the legislation specifically provided that this section not affect any litigation pending prior to ratification on 21 June 1996 and shall expire 1 June 1997. 1995 S.L. (Regular Session 1996) c.713, s.4. Therefore, this section provides us with little more than a basis for conjecture as to the legislative intent surrounding the meaning of "competitive health care activities" pursuant to G.S. 131E-97.3.

The section of the Hospital Licensure Act entitled "Confidentiality of competitive health care information" provides as follows:

> Information relating to competitive health care activities by or on behalf of hospitals shall be confidential and not a public record under Chapter 132 of the General Statutes; provided that any contract entered into by or on behalf of a public hospital, as defined in G.S. 159-39, shall be a public record unless otherwise exempted by law.

G.S. 131E-97.3. The plain language of this section exempts certain information from the Public Records Act when two requirements are

met: (1) The material must relate to competitive health care; and (2) the material must not be a contract executed with a public hospital. Here there is an executed contract between Medical Center and PHP. The price lists in dispute are part of that contract. Therefore, G.S. 131E-97.3 does not exempt the price lists from the Public Records Act, but it does not prohibit other exceptions to the Public Records Act.

G.S. 132-1.2 exempts from disclosure confidential information that meets all of the following requirements:

(1) Constitutes a "trade secret" as defined in G.S. 66-152(3);

(2) Is the property of a private "person" as defined in G.S. 66-152(2);

(3) Is disclosed or furnished to the public agency in connection with the owner's performance of a public contract or in connection with a bid, application, proposal, industrial development project, or in compliance with laws, regulations, rules, or ordinances of the United States, the State, or political subdivisions of the State; *and*

(4) Is designated or indicated as "confidential" or as a "trade secret" at the time of its initial disclosure to the public agency.

G.S. 132-1.2 (emphasis added).

The term "trade secret" is defined in the Trade Secrets Protection Act as follows:

"Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique or process that:

a. Derives independent, actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

G.S. 66-152(3) (1992). According to the plain language of G.S. 66-152(3), trade secrets may concern business information that is for-

mulated or compiled and that meets two requirements: (1) The information must have commercial value from not being known or readily ascertainable; and (2) reasonable efforts must be made to keep the information secret. Here in order to survive Morning Star's motion for summary judgment, PHP must allege facts sufficient to allow a reasonable finder of fact to conclude that the negotiated price lists meet these two requirements of a trade secret. *Bank Travel Bank v. McCoy*, 802 F. Supp. 1358, 1360 (E.D.N.C. 1992) (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 552 (1986)), *order affirmed, Amariglio-Dunn v. McCoy*, 4 F.3d 984 (4th Cir. 1993).

No decisions in North Carolina have concluded that a negotiated price list is a trade secret within the meaning of G.S. 66-152(3). Respondents argue that the decisions of *S.E.T.A. UNC-CH, Inc. v. Huffines*, 101 N.C. App. 292, 399 S.E.2d 340 (1991) and *N.C. Elec. Membership Corp. v. N.C. Dept. of Economic and Community Dev.*, 108 N.C. App. 711, 425 S.E.2d 440 (1993) support their position that the price lists may constitute trade secrets.

In *Huffines* the Court concluded that general information requested about laboratory experiments on animals did not constitute trade secrets. 101 N.C. App. at 296, 399 S.E.2d at 343. However, the *Huffines* Court commented that such disclosure requests about laboratory experiments may seek patentable information that may constitute trade secrets, and therefore, requests for disclosure of this information should be reviewed on a case by case basis. *Id.* In *N.C. Elec. Membership Corp.* this Court found that documents containing pricing information, market forecasts, and feasibility studies that were developed unilaterally by the party seeking to enjoin disclosure, were trade secrets. 108 N.C. App. at 715, 718, 425 S.E.2d at 442, 444. Neither of these cases concerned information similar to the price lists here, but rather, involved information that was patentable, unilaterally created, business forecasts, feasibility studies, or pricing formulas. Both of these cases imply that a case by case determination of the kind or type of information in dispute is necessary. However, G.S. 66-152(3) seems to require a deeper inquiry.

Other jurisdictions in interpreting similar trade secret statutes have determined the following factors should be considered:

(1) The extent to which information is known outside the business;

(2) the extent to which it is known to employees and others involved in the business;

(3) the extent of measures taken to guard secrecy of the information;

(4) the value of information to business and its competitors;

(5) the amount of effort or money expended in developing the information; and

(6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Ecolab Inc. v. Paolo*, 753 F. Supp. 1100, 1111-12 (E.D.N.Y 1991) (citing *Integrated Cash Management Services v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2nd Cir. 1990); *Eagle Comtronics, Inc. v. Pico, Inc.*, 453 N.Y.S. 2d 470, 472 (1982) (price discount, product use, and preference information constituted trade secrets under New York law)); *see also Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1346 (data on prices bid by each hospital and corresponding calculations used to decide which hospitals to include in PPO were unquestionably sensitive trade secrets), *reh'g denied*, 788 F.2d 1223 (7th Cir. 1986).

Here the pleadings, admissions, affidavits, interrogatories viewed in the light most favorable to PHP and Medical Center indicated the following: The disclosure of the financial terms of a contract between an HMO and a hospital would be of substantial economic benefit to the competitors of that HMO; each HMO member of the North Carolina HMO Association considers the financial terms of its agreements with health care providers to be confidential trade secrets; disclosure of the financial terms of specific contracts between HMOs and health care providers would be detrimental to competition in the industry and would impair the ability of HMOs to control the rising costs of health care; "secret pricing" is more important to vigorous competition in a concentrated market; PHP and Medical Center are in a concentrated market; HMOs in North Carolina and nationally view price terms of their contracts with health providers as extremely important to keep secret; PHP advised the hospital that the pricing information was confidential at the beginning of negotiations over the agreement; the agreement specifies that "the parties agree to maintain the confidentiality of this agreement, and shall not divulge the terms to any third party . . ."; the price lists were accessible only to a

limited number of people; physicians did not have access to the price lists; and it would be extremely difficult for an HMO's competitors to generate this specific information. No testimony revealed the difficulty or amount of money expended to generate the price list. We conclude that in the light most favorable to PHP and Medical Center a reasonable trier of fact could conclude that the price lists constitute trade secrets.

However, in order for information to be exempted from disclosure under the Public Records Act, G.S. 132-1.2 also requires that the confidential information be the "property of a private 'person' as defined in G.S. 66-152(2)." G.S. 66-152(2) defines "person" broadly as "an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, joint venture, or any other legal or commercial entity." However, G.S. 132-1.2(2) juxtaposes "private" next to "person." The plain language suggests a legislative intent to limit this exclusion from the Public Records Act to nongovernmental agencies. Here it is not disputed that Medical Center is a governmental agency within the meaning of the Public Records Act. *See* G.S. 132-1; *see also News and Observer Publishing Co. v. Wake County Hospital Sys.*, 55 N.C. App. 1, 248 S.E.2d 542 (1981), *disc. review denied*, 305 N.C. 302, 291 S.E.2d 151, *cert. denied*, 459 U.S. 803, 74 L. Ed. 2d 42 (1982) (private, non-profit hospital corporation, subject to supervision by Wake County and financed by county bonds, was an agency of county within purview of the Public Records Act). Also, it would defy logic to insist that negotiated price lists belong solely to PHP and not also to Medical Center. We respectfully conclude that because the price lists here are not property of a private person within the meaning of G.S. 132-1.2(2), the respondents are not entitled to the benefit of the statutory exemption from disclosure pursuant to the Public Records Act. The trial court's order compelling disclosure is affirmed.

We recognize that this holding arguably may adversely affect public hospitals' ability to compete with nongovernmental entities but we consider that question an appropriate legislative issue. As to any arguable competitive disadvantage to PHP, we consider appropriate the succinct observation of the United States District Court for the District of Columbia, "[d]isclosure of prices charged the Government is a cost of doing business with the Government." *Recal-Milgo Gov't Sys. v. Small Business Admin.*, 559 F. Supp. 4, 6 (D.C. 1981).

Affirmed.

**WILMINGTON STAR NEWS v. NEW HANOVER REGIONAL MEDICAL CENTER**

[125 N.C. App. 174 (1997)]

*MORNING STAR'S APPEAL*

**[2]** Morning Star fails to bring forward or advance any argument in its unnumbered second assignment of error that the trial judge abused his discretion in issuing the stay order; therefore, this assignment of error is deemed abandoned pursuant to the North Carolina Rules of Appellate Procedure. N.C.R. App. P. 28(b)(4).

The issue before us is whether the trial court has the legal authority to stay its own orders pending appeal in cases involving the Public Records Act. Morning Star argues that while the General Court of Justice possesses jurisdiction under the Public Records Act to issue an order compelling disclosure of public records, the trial divisions of the Court lack any authority to stay enforcement of their decisions. Morning Star argues that the absence of express statutory language conferring authority to issue stays pending appeal indicates a legislative intent to withhold that authority. In addition, Morning Star argues that the statutory language conferring on the trial court the general statutory power to stay execution of judgments directing the delivery of documents and personal property pursuant to G.S. 1-290 does not apply to public records. We find Morning Star's argument wholly without merit.

Rule 62(d) of the North Carolina Rules of Civil Procedure empowers trial courts to issue stay orders pending appeal as follows:

> When an appeal is taken, the appellant may obtain a stay of execution, subject to the exceptions contained in section (a), by proceeding in accordance with and subject to the conditions of [G.S. 1-289 through 1-295].

Morning Star contends that G.S. 1-290 which concerns the procedure for obtaining a stay from the trial court directing delivery of documents, only applies to private property and not public records. Morning Star cites no authority for its contention that the general principles of civil procedure do not apply in Public Records Act litigation unless specifically incorporated in the text of the statutes. Furthermore, Morning Star fails to consider that statutes in derogation of the common law and statutes depriving courts of jurisdiction are to be strictly construed. *See Swift & Co. v. Tempelos*, 178 N.C. 487, 101 S.E. 8 (1919); *State v. Sullivan*, 110 N.C. 513, 14 S.E. 796 (1892). We hold that the trial court possesses the legal authority to stay its own orders pending appeal in cases involving the Public Records Act. *See News and Observer Publishing Co. v. State ex rel.*

*Starling*, 312 N.C. 276, 322 S.E.2d 133 (1984); *News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 412 S.E.2d 7 (1992); *N.C. Press Assoc. v. Spangler*, 87 N.C. App. 169, 360 S.E.2d 138 (1987).

Affirmed.

Judges MARTIN, John C., and SMITH concur.